Jutge Owsley
delivered the Opinion of the Court.
This was an action of deist, brought by the Bank of Limestone against Penick, upon the following writing:
“ Dollars 5500. Sixty days after dale, we, Richard L. Watters, William Penick and Israel Jennings, or either of us, promise to pay to the order of the President, Drioctors and company of the bank of Limestone, fifty five hundred dollars, for value received; negotiable and payable at said hank, without defalcation. Witness our hands, April 11th, 1820.
Richard L. Walters,
Win. Pcnick,

Israel JennhgsP

Penick pleaded four pleas: 1st, Payment with notice of set oil': 2nd, That the writing sued on was obtained by fraud, covin and collusion of the bank: 3rd, Non est factum-. 4th, That the writing declared on, was obtained from Penick, by fraud, covin and misrepresentation; that is to say, by the plaintiffs and others in collusion with them, falsely and fraudulently representing to him, the said Penick, that the said writing obligatory was executed and delivered to them, the said plaintiffs, by Richard L. Watters, for the purpose of obtaining the signatures of the saicl Penick and Israel Jennings, one of the obligors in said writing, as the sureties of the said Richard L. Watters in the said joint and several obligation sued on ; by which false and fraudulent representation, the said Pcnick was induced to affix his signature to the said writing, when, as he, the said Penick, avers, the said writing was not executed and delivered to the said plaintiffs, by the said Richard L. Watters, for the purpose of obtaining the signature of him, the said Penick, and Israel Jennings as sureties for said Watters in the said joint and several obligation in the declaration mentioned ; wherefore, lie, the said *26 Penick, says, that the said writing obligatory, is void in law, &c. &c.”
Verdict and judgment for Penick.
Instructions of the court for Penick.
2nd Instruction.
3rd Instruction.
■4 th Instruction.
Issues were made up to each of these pleas, and verdict and judgment recovered by Penick.
On the trial, the court instructed the jury—
1st. That if they were of opinion, from the evidence in the cause, that the plaintiffs filled up the blank of Richard L. Watters without his consent, binding him in a manner different from what was contemplated and authorized by hin*when he delivered the blank with his name thereto affixed, that the obligation thus taken by the plaintiffs, payable to a different party, is not the deed of said Watters, but void as to him; unless they should be of opinion he re-acknowledged and confirmed the same after it had been filled up: and any act which clearly indicates the assent of the mind to stand to and perform a contract previously entered into, amounts to a confirmation.
find. If the jury should be of opinion, that the plaintiffs, or their agent, did not inform the defendant Penick, who signed the writing as surety for Watters, that the said writing was filled up as above supposed, (provided the jury shall be satisfied from the evidence, it was so filled up,) it was a fraud upon Penick, and renders the obligation void as to him; unless the jury should be satisfied from the evidence, that Penick was fully apprised of its having been so filled without the authority of Watters: and the burthen of proof of his having been so apprised lies upon the plaintiffs.
3rd. If the jury shall be of opinion, that the plaintiffs, after the execution and delivery of the note sued upon by Penick, inserted the name of Jennings as a new party thereto, without the assent of Watters and Penick, it rendered the obligation void as to them; unless they, or one of them, afterwards confirmed the same, and in case it was confirmed by one only, it would be obligatory on him only.
4th. If the jury should be of opinion, that at the time, to-wit, the 11th of April, this writing was ordered to be discounted, it was not executed by Pe *27 nick, Iiis subsequent signature and delivery as surety for Watters, would not be obligatory on him, unless the note was again discounted, or executed upon some consideration operating beneficially to himself or to his principal, or injuriously to the plaintiffs.
Principal offered as a witness for surety, released and examined.
Assignment of errors,.
Principal in a promissory note, released by the surety,is a competent witness for surety in an action against him.
In the progress of the trial, Penick introduced Richard L. Watters, one of the persons by whom the writing sued on purports to have been given, as a witness ; the competency of whose testimony was ob jected to by the bank; but upon Penick releasing Waiters from all liability to him, the objection to his competency as a witness, was overruled, and his testimony given to the jury.
The assignment of errors question the correctness of the several instructions which the court gave to the jury, as also the propriety of the decision, admitting the evidence of Watters.
With respect to Watters’ evidence, we think the court decided correctly in admitting it to go to the jury. The objection to his competency would have assumed quite a different aspect, if the action had been a joint one against all of the persons by whom the writing declared on purports to have been executed; for as Waters would then have been a party to the action, it might with great force he contended, that no release by Penick, a co-obligor, could, in a suit to which both are defendants, remove the objections to Watters’ competency as a witness for him. But this suit was brought, not jointly against all of the persons named as obligors in the writing, but against Penick only; so that there lies no objection to the competency of Watters on the score of his being a party to the action. The only objection which can fairly he urged to the competency .of Watters in this case, grows out of the interest which, as a co-obligor, he may be supposed to have in the event of the suit; and that interest, it is admitted, would he sufficient to exclude his testimony if it had not been removed before his evidence was received. But we understand the release, which was executed by Penick, to have absolved Watters from any possible liability to him, and we are incapable of discerning any interest which Watters can have had in *28 the event of this contest, except that which grew out of his liability to Penick.
i.lie evidence!
Person signJngbis name impor,1 a"d delivering it ioJ. S. anío fiíl«pJÚie blank with an SU^~I~ j the sUpiiiiZ'.> will bind ic.a fol'i(:-
*28 Before we proceed to examine the correctness of the instructions which were given to the jury, it is proper that we should state briefly some of the prominent facts, which the evidence introduced at the trial conduced lo prove. R appears, that some time before the date of the writing sued on, Richard L. Watters being indebted to the hank fifty-five hundred dollars, by note with Penick and Jennings his endorsers, and that about the winter of Í 820, several blanks, signed in the name of Waders, and endorsed in the name of Penick and Jennings, respectively, were left by Waiters in the bank, to he used, when filled up, for the purpose of renewing his note, which was assigned hy Penick and Jennings, when it became payable. That, in April, 1820, the bank (hanged the form of its notes, from the endorsed forsn, to that of-a joint and several obligation; and that in consequence of that change, cno of the blanks, left hy Watters was filled up above his name with a joint and several obligation. That in consequence of the signature of Watters being so near to the bottom of tbe paper that there was not room for his joint obligors to sign it, an additional piece of paper was pasted to ih and that upon this piece, William Pellicle and Israel Jennings signed their names : and that this - note, (it being the one upon which this suit is founded,) in the joint and several form, after the signatures of all the persons therein named as obligors were procured, was substituted by the board of directors, in the place of Waiters’ endorsed note. These were the principal facts which the evidence wrent to establish, and which were reíéred to the consideration of the jury hy the court in its first instructions.
We will, therefore, proceed to enquire, whether or not, upon this evidence, the court was correct in instructing the jury, that if they were of opinion, from the evidence, that the plaintiffs filled up the blank of Richard L. Watters, without his eon-sent, binding him in a manner different from what ^ontemplated and authorized by him when he dehvercu the Rank with las name thereto max *29 cd; that the obligation thus taken by the plaintiffs, payable to a different party, is not the deed of Watters, but void as to him.
p¡,t g.-> .¡j-oft- w.-i W •r; am] ( not aoibor^-., it to bo filled as m ease of notes and bills.
*29 We understand the instructions of the court to admit that hy putting his name to the blank paper, Watters gave an authority to the bank to fill up a note which would he binding upon him, but to go upon the idea, that, from the evidence, the jury might infer an intention by Watters, that the note should he filled up in the endorsed form, and not in the form of a joint and several obligation, and that if such were his understanding, the note in question (it being filled up directly to the bank,) is not binding upon him.
That the court was correct in conceding to the bank authority to fill up the blank is a proposition that, upon common law principles, admits of no controversy. It has been repeatedly held, that the signing a name on a blank piece of paper operates as a letter of credit, giving to the person to whom it is delivered authority to insert any amount whatever. Tims in CJiitty on bills, 28, it is said to have been /decided, “that a person signing his name on a blank stamped piece of paper, and delivering it to J. S. authorises J. S. to insert any cum which the amount of the stamp will warrant.” Again, in page 103, the same author says, “that it has been adjudged, that if a man endorses his name on a blank stamp, or piece of paper, such an endorsement vail operate as a letter of credit, for an indefinite sum, consistent with the stamp, and will bind the endorser, for any sura, to he paid at any time, which the person to ■whom he entrusts the instrument chooses to insert in it. So where A. made a note with a blank for the sum, and sent it to B. the payee, and requested him to fill it up, on action brought, it was held that B. had a right so to do, and he recovered, 2 Wash. Rep. 164.
With respect to deeds the rule we know is said to be different. Perkins on conveyances, in the 118 section says, “if a common person seal an obligation or any other deed without any writing in it, and deliver the same to a stranger, man or woman, it is nothing *30 worth: notwithstanding the stranger make it to bo written, that be who sealed and delivered the same unto him, is bounden unto him in the sum of twenty pounds.”
Act of 1812, placing unsealed writings on a footing with sealed, does not altor the modo of executing them, and so blanks may bo iillod in such writings, after delivery .
Debtor of a bank, on a note payable to an accommodation endorser, having deposited a blank for a renewal without moro saying, the officers of the bank filled it up an a joint and several obligation on him and the endorsers, and they added their signatures, held that all were bound.
But the writing upon which the present action is founded is not a deed, and the authority of the bank to fill up the blank must, we apprehend, he governed by the common law principle applicable to unsealed writings, it is true, the note in question bears date since the act of this country, placing unsealed writings upon the footing of sealed writings; but that act lias been held, and we apprehend held correctly, not to diminish the legal force of unsealed writings, but to give them additional efficacy when executed according to the rules and principles of the common law.
We shall not deny hut that, from the evidence, it may fairly be inferred to have been the understanding of Watters, that the blank paper to which his name was subscribed and left with the bank, was to be filled up in the endorsed form, and not in the form of a joint and several obligation payable directly to the bank; but we arc not prepared to admit that the court was correct in instructing the jury that if they should be of opinion such was the understanding of Watters when he put bis name to the paper, the note as filled up, was void and not binding upon him. Though at the time he put his name to the blank paper, it may have been understood by Watters, that it was to be filled up in the endorsed form, his main and principal object in putting his name to the paper and leaving it with the bank has been fulfilled. He was owing to the bank five thousand five hundred dollars, by note, previously executed by him, and endorsed by Peniek and Jennings; and his principal object in putting his name to the blank paper, and leaving it with the bank, was to obtain a further indulgence as to the time of payment, by having the blank when filled up, substituted by the bank, for the note it then held upon him. That object was accomplished by the note in question. It is true the note may not have been filled up in the precise form that was un *31 derstood by Watters when he put his name to the blank paper; but we are incapable of perceiving any possible injury to which Watters is exposed by tile form in which the blank was filled, and to which he would not have been equally liable, if it had been filled up in the endorsed form. In either form his liability is directly to the bank, and in neither form is the liability greater than in the other. In the endorsed form the note would not purport a direct promise to pay the bank, but it would import a promise to pay one of the persons whose name was also endorsed, and upon its being substituted by the binds for the note then owing by Watters, would be as much the property of the bank as if filled up, as the note in question, in the form of a joint and several obligation, and upon which the bank might, in its corporate name, maintain an action against him. It is evident, therefore, that although, in filling up the blank, the bank may not, in point of form, have conformed to the understanding of Watters at the time he put his name to the paper; iu substance the authority of the bank to fill the blank has not been abused or exceeded. The first instructions of the court cannot, therefore, be sustained.
Any aJii'r.i • tioit, however immaterial, made io 'a deader promissory note, made by the ohhgoe, k ilheul ebligori.s consent, roadors it void,
*31 And if we are correct as to the first instruction, it follows necessarily that the court below must have erred in its second instruction to the jury. For if, in filling up the blank, the authority of the hank was not transcended, though it may not have been formally executed according to the understanding of Watters, it is impossible that by failing to inform Penick of the formal deviation in filling up the note from what may have been the understanding of Watters, the bank can have been guilty of such a fraud upon Penick, as to render the note void as to him.
The third instruction was predicated upon the opinion which the jury might form on the following evidence. It was proved that after the blank ■was filled up with the names of Watters and Penick, and after Penick had subscribed his name thereto, the name of Jennings as a new party, was placed in the note; and by the third instruction, the jury were *32 told, that if the name of Jennings was so inserted in (jlc note, ]>y the plaintiffs or their agent without the assent of Watters and Penick, the note was void to them; unless they, or one of them, afterwards confirmed the same, and in case it was confirmed by one only, it would be obligatory on him only.
A flor a note lias been dis-i'mik^it may bo executed by sureties, lr'<bo’mdWI'1 v. ithout any ron* oousidcration.
The doctrine of the law upon the subject of the alteration of deeds is well settled; and is perhaps as intelligibly laid down in Shepherd’s Touchstone as *n auy other work. It is there said; “ If a deed that is well and sufficiently made in its creation, «shall be afterwards altered by rasure, interlining, ai-xiitlori, drawing a line through the words (though they be still legible) or by writing new letters upon the old, in any material place or part of it, as if it be in a deed or grant, in the name of the grantor, grantee or thing granted, or in the limitation of the estate, or if it be in an obligation, when the word (heirs) shall be inserted, or the sum increased, or in the date of either, or the like; be the same cither by the party himself that hath the property of the deed, or any other whomsoever, except it be by him that is bound by the deed, and be the same with or without the consent of him to whom it is made or doth belong, in this case and by either of these means, the deed hath lost its force and is become void,” Shop. T. 68. The doctrine thus briefly stated by Shepherd is recognized and supported by numerous adjudged cases, many of which are refered to by Comyns in his digest, title Fail, letter F. 1. It is true that all of those cases apply to, and go to shew, the doctrine of the law as to deeds, and we have before remarked that although, under the act of this country placing unsealed writings upon the footing of sealed, the writing upon which tliis suit is founded, must, to some purposes, be treated as a deed, it is not in fact and law a deed. But whether or not it be treated as a deed, is totally immaterial as to the effect which any alteration of it since it was executed can produce. For before the passage of the act elevating unsealed writings to the dignity of sealed writings, a promisory note would be rendered void by any material alteration after it was made, Chitty on bills, 85; Evans’ Essay on bills, 105.
Obligation of the surety does not depend on his executing at the same time with the principal.
Crittenden, C. S. Bibb and Broten, for plaintiff; Reed, for defendant.
Whether, therefore, the note in question be considered as a deed, or only as a promissory note not possessing the dignity of sealed instruments, it is equally dear, from authority, that if, since it became the note of Watters and Penick, it has, without their approbation or consent, been altered by inserting the name of Jennings as a co-obligor, it is void as to them, unless by some act of theirs or one of them, it has since been confirmed. Whether or not the alteration was made by the consent of Watters and Penick was a matter which was left with the jury and which was competent for them to decide under all the circumstances.
With respect to the fourth instruction, if we un-. derstand it correctly, the decision of the court below cannot be sustained. That instruction seems to go upon the idea, that there is an essential difference as to che legal effect of the note executed and discounted by the hank, and one that is executed to the bank, but not discounted; and that although the note, if it had been discounted after Penick signed it, might have been binding upon him, it is not so if it has not been discounted. But the reason for the distinction is not perceived by us, and we apprehend that no such distinction has any foundation in law.
The judgment of the court must be reversed with cost, the cause remanded to the court below, and further proceedings there had, not inconsistent with this opinion.